UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARVIN SEALES,

Plaintiff,

v.

CITY OF DETROIT, et al.,

Defendants.
_____/

Case No. 12-cv-11679

UNITED STATES DISTRICT COURT JUDGE
GERSHWIN A. DRAIN

UNITED STATES MAGISTRATE JUDGE
DAVID R. GRAND

**OPINION AND ORDER GRANTING WAYNE COUNTY'S MOTION FOR SUMMARY JUDGMENT [70] AND DENYING PLAINTIFF'S MOTION FOR AN ADVERSE INFERENCE [77]**

**I. INTRODUCTION**

On April 16, 2012, Marvin Seales ("Plaintiff") filed a Complaint and Demand for Trial by Jury against the City of Detroit and unnamed officers for violating his constitutional rights when he was arrested and detained for fourteen days because of mistaken identity. *See* Dkt. No. 1.

Presently before the Court is Defendant Wayne County's Motion for Summary Judgment, filed on August 26, 2016, Dkt. No. 70, and Plaintiff's Motion to Add an Adverse Inference filed on September 19, 2016, Dkt. No. 77. The matter is fully briefed and a hearing was held on December 5, 2016.

For the reasons discussed herein, the Court will **GRANT** Wayne County's Motion for Summary Judgment [70] and **DENY** Plaintiff's Motion to Add an Averse Inference [77].

## II. BACKGROUND

On January 18, 2012, officers from the U.S. Marshals Service Detroit Fugitive Apprehension Team ("the Team"), including Defendant Thomas Zberkot, executed an arrest warrant for attempted murder for a "Roderick Siner." Dkt. No. 70-2. Roderick Siner used several aliases, including "Marvin Seals." *Id*. The Team arrested Plaintiff, Marvin Seales, at his workplace, Reinhart Food Service, in Warren, Michigan. *Id*. at 2.

Plaintiff was then taken to the Detroit Police Department Northeast/3rd Precinct lockup. *Id*. At the precinct, Plaintiff was photographed and fingerprinted. Dkt. No. 70-3, p. 5 (Pg. ID No. 380). He was held in the City of Detroit Police Department facility until his video arraignment with Magistrate Millicent D. Sherman of the 36th District Court on January 20, 2012. Dkt. No. 70-4, p. 2 (Pg. ID No. 385). At Plaintiff's video arraignment, he stated his name was "Marvin Seals," [sic] and acknowledged that he heard the charges against him, understood the penalties that applied to those charges, and understood his right to remain silent and retain counsel. *Id*. at 4–5. He did not make any statements about mistaken identity during the arraignment.

Magistrate Sherman set bond in the amount of $500,000 dollars, "given the nature of the charges and the seriousness of the allegations." *Id*. at 5. Sherman then issued a mittimus ordering that Plaintiff be held in the Wayne County Jail until his scheduled preliminary examination of February 1, 2012. Dkt. No. 70-5, p. 2 (Pg. ID No. 391).

Plaintiff was then transferred to the Wayne County Jail. Wayne County Sheriff's Deputy Denie Marks was acting as the supervisor for the registry/booking area of the Wayne County Jail on the afternoon of January 20, 2012. Dkt. No. 75-4, pp. 3–4 (Pg. ID No. 552–53). Marks has no independent recollection of Plaintiff and was not involved in his specific booking. *Id*. at 4.

The standard procedure at the Wayne County Jail was to compare the "Livescan" generated by the local arresting agency—the Team in the present case—with the mittimus ordered by the court. Dkt. No. 70-7, p. 4 (Pg. ID No. 399). The Livescan also typically includes the arrestee's name, aliases, Social Security number if available, system ID number, and arrest charges. Dkt. No. 75-4, p. 9 (Pg. ID No. 558). The arresting agency fingerprints arrestees when they are first taken into custody, and compares those fingerprints with individuals in the Livescan system. *Id*. If the arrestee's fingerprints are not already present in the Livescan system, a new profile is created. *Id*. at 10. Marks testified that booking photographs

are not used "[b]ecause appearances can change, but fingerprints are constant." *Id.* at 9.

Marks also testified to the procedure for when an inmate complains of mistaken identity. *Id.* at 8. Arrestees have complained that the arresting agency arrested the wrong person "a handful" of times in the three years Marks worked as a supervisor. *Id.* If an inmate insisted that he or she had been wrongfully arrested, Wayne County Jail employees would re-fingerprint the arrestee to check identity, taking another Livescan for identification purposes only, and sometimes contact the court. *Id.* If it was determined that an innocent person had been arrested, the arrestee would be immediately released. *Id.*

Plaintiff testified that he did not verbally inform any employee at the Wayne County Jail of his mistaken identity claim. Dkt. No. 70-3, pp. 6, (Pg. ID No. 381, 383). Plaintiff testified in his deposition as follows:

> Q: Okay. So you didn't tell the booking officer that you're not Roderick Siner; correct?
> A: Correct.
> …
> Q: So you had already told— you already—strike that. So in your mind, by the time you get up to the—your housing unit, you're pretty much not telling any deputies that you're not Roderick Siner because you believe nobody is going to believe you?
> A: Correct.
> …
> Q: We're almost done, sir, with the questions I have for you. And so, sir, just to recap, you didn't tell the booking officer at Wayne County, at the—at the Wayne County Jail that you're not Roderick

-4-

> Siner; correct? You already told me that, you didn't tell the booking officer; right?
> A: No.
> Q: Okay. And you didn't tell any officers on the floor that you weren't Roderick Siner, because by that time you didn't think anybody was going to believe you; correct?
> A: Correct.

*Id*. Wayne County Jail records indicate Plaintiff submitted a grievance dated January 24, 2012 describing "wrong booking name." Dkt. No. 70-9, pp. 2–3 (Pg. ID No. 424–25). Wayne County now maintains that, despite diligent search, it has been unable to locate the original copy of the grievance. Dkt. No. 70-10, pp. 2–3 (Pg. ID No. 427–28).

On February 1, 2012, Plaintiff appeared at a scheduled preliminary examination before 36th District Court Judge Deborah G. Bledsoe Ford on the charges of Assault with Intent to Murder, Felony Assault, and Felony Firearm, as Rodrick Siner. Dkt. No. 75-3. Plaintiff was represented by counsel, Earl Washington, at the hearing. *Id*. at 4. At the start of the hearing, Wayne County Prosecutor Shannon Walker orally moved to dismiss the matter because the victim of the crime informed her before the hearing that Plaintiff was not the individual who shot at him. *Id*. That same day, Judge Deborah Ford of the 36th Judicial District signed an order of Dismissal, which states that Plaintiff was not the correct defendant and that he was wrongfully arrested. Dkt. No. 75-6.

Plaintiff filed the present suit on April 16, 2012. Dkt. No. 1. Plaintiff amended his complaint for the first time on April 9, 2013, adding Wayne County as a defendant. Dkt. No. 28. The case was stayed on July 29, 2013, to accommodate the City of Detroit bankruptcy filing. Dkt. No. 41. On November 17, 2015, the stay was lifted and the case was reopened. Dkt. No. 49. Wayne County filed for partial summary judgment on June 8, 2016, Dkt. No. 63, and Plaintiff agreed to dismiss Counts II, III, and IV against Wayne County on August 29, 2016, Dkt. No. 71. The sole remaining count against Wayne County is Count VI, alleging municipal liability under 42 U.S.C. § 1983 for violations of Plaintiff's rights under United States Constitution, Amendments I, IV, V and XIV, and Article 1, §§ 5, 6, 11 and 17 of the Michigan Constitution. Dkt. No. 28, pp. 16–19 (Pg. ID No. 136–39).

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 56(c) "directs that summary judgment shall be granted if 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 779 (6th Cir. 1998). The court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No genuine dispute of material fact exists where the record "taken as a whole could

not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court evaluates "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

### IV. DISCUSSION

**A. Wayne County's Motion for Summary Judgment**

Plaintiff's *Monell* claim against Wayne County alleges violations under the First Amendment, Fourth Amendment, Fifth Amendment, and Fourteenth Amendment of the United States Constitution and Article 1, Sections 5, 6, 11, and 17 of the Michigan Constitution. Dkt. No. 28, pp. 16–19 (Pg. ID No. 136–39).

Since Plaintiff at no point makes any argument or presents any evidence that his First Amendment rights were violated, the Court will not analyze this claim. Additionally, because § 1983 only protects rights secured by the United States Constitution and federal law, the Court will not review Plaintiff's claims that Defendants violated his rights under the Michigan Constitution under the § 1983 framework. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008) ("A prima facie case under § 1983 has two elements: "(1) the defendant must be acting under

the color of state law, and (2) the offending conduct must deprive the plaintiff of *rights secured by federal law*.") (emphasis added).

### 1. Whether Employees of Wayne County Violated Plaintiff's Constitutional Rights

"The Constitution does not guarantee that only the guilty will be arrested." *Baker v. McCollan*, 443 U.S. 137, 145 (1979). In *Baker*, the Supreme Court noted that law enforcement officers are not "required by the Constitution to investigate independently every claim of innocence," or to "perform an error-free investigation of such a claim," even when that claim is based on mistaken identity. *Id*. at 145–46 (finding that where there is a valid warrant for arrest, a three-day detention of the wrong person based on mistaken identity does not give rise to a constitutional violation).

However, an individual cannot "be detained indefinitely in the face of repeated protests of innocence even though the warrant under which he was arrested and detained met the standards of the Fourth Amendment." *Id*. at 144. In *Gray v. Cuyahoga County Sheriff's Department*, the Sixth Circuit found that it was a question for the jury whether the individual defendants "acted with something akin to deliberate indifference in failing to ascertain that the [person] they had in custody was not the person wanted by the Michigan authorities on the outstanding parole-violation warrant." 150 F.3d 579, 583 (6th Cir. 1998). The plaintiff in *Gray* was detained for forty-one days and presented evidence that he repeatedly

protested his innocence, the deputies possessed a photograph from the beginning of plaintiff's detention that "bore virtually no resemblance [to the plaintiff]," and the deputies provided insufficient proof that "they conducted reasonable inquiry into the apparent discrepancy." *Id*. at 582–83. Conversely, in *Thurmond v. County of Wayne*, the Sixth Circuit affirmed summary judgment in favor of three individual defendants where the plaintiff, who was arrested based on mistaken identity, neither protested his innocence to deputies at any time, nor were any of the deputies in possession of any potentially exculpatory evidence. 447 F. App'x 643, 650 (6th Cir. 2011).

In the present case, Plaintiff has provided the Court with photographs of himself and Siner that show differences in their facial features. Dkt. No. 75-2. Plaintiff argues that this mug shot and further identification of Siner were available to Wayne County at the time of Plaintiff's arrest. Dkt. No. 75, p. 11 (Pg. ID No. 522). Plaintiff's photographic evidence is undated, and there is no evidence confirming or disproving that Wayne County had these photographs at the time of Plaintiff's arrest.[1]

---

[1] Plaintiff's response demonstrates some indifference to factual accuracy. For example, Plaintiff alleges that the Wayne County Prosecutor "noticed the glaring dissimilarity between the mug shot of Rodrick Siner and the appearance of Marvin" during the preliminary examination, and that this is what led to the charges being dismissed. Dkt. No. 75, pp. 11–12 (Pg. ID No. 522–23). Plaintiff's own attached exhibit—the transcript of the hearing—indicates that this is untrue, and that the charges were dismissed after the victim indicated Plaintiff was not his

Additionally, there is undisputed evidence that Plaintiff filed a grievance during his detention at the Wayne County Jail. Dkt. No. 70-9. This grievance, which Wayne County subsequently lost, was filed on January 24, 2012, four days after Plaintiff was transferred to Wayne County and eight days before Plaintiff was released from custody. *See id.* The only information known about this grievance is that it was in reference to a "wrong booking name." *Id.* Wayne County claims that it could wait up to ten days under its policy to respond to a grievance. *See* Dkt. No. 70-11, p. 3 (Pg. ID No. 431) ("Staff members have up to 10 days, from the receipt of the Grievance, excluding weekends and holidays, to act on the matter and provide a written response to the inmate.").

Viewing the evidence in the light most favorable to the non-moving party, this evidence is enough to create a question of material fact as to whether employees at the Wayne County Jail violated Plaintiff's Fourteenth Amendment due-process rights. *See, e.g., Gray*, 150 F.3d at 582–83 (finding a jury could find that defendants violated a plaintiff's due process rights where there was no proof that defendants had not received a photograph or had conducted sufficient inquiry into a photograph of the actual person wanted by the Michigan authorities); *Gant v.*

---

attacker. Dkt. No. 75-3, p. 4 (Pg. ID No. 541). Plaintiff has not presented facts that indicate that Wayne County had Siner's mug shot at the time of Plaintiff's arrest. *See* Dkt. No. 75-4, p. 5 (Pg. ID No. 554) ("Q: Do you know if Wayne County had access to any mugshots of Rodrick Siner on January 18th when Mr. Seales was lodged in jail? A: I don't know.").

*Cty. of Los Angeles*, 772 F.3d 608, 622–23 (9th Cir. 2014) (finding evidence that the plaintiff may have said "I'm not the person you're looking for" was sufficient to create an issue of material fact, even though the plaintiff testified at his deposition that he did not complain to anyone about the issue of mistaken identity during his custody).

### 2. Whether Plaintiff Has Produced Evidence of a *Monell* Claim

Having determined that a reasonable finder of fact could find that a constitutional violation occurred, the Court now turns to whether Plaintiff raised a genuine issue of a material fact on his municipal liability claim.

Plaintiff's § 1983 claim against Wayne County "must demonstrate that the alleged federal violation occurred because of a municipal policy or custom." *Burgess v. Fischer*, 735 F.3d 462, 478 (6th Cir. 2013) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)); *see also Miller v. Sanilac Cnty.*, 606 F.3d 240, 254–55 (6th Cir. 2010) (the plaintiff must show that his constitutional rights were violated and that a policy or custom of the county was the "moving force" behind the deprivation of his rights). Plaintiff must make this showing by demonstrating one of the following:

> (1) the existence of an illegal official policy or legislative enactment;
> (2) that an official with final decision making authority ratified illegal actions;
> (3) the existence of a policy of inadequate training or supervision; or
> (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Burgess*, 735 F.3d at 478 (citing *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005)). "A municipality 'may not be sued under § 1983 for an injury inflicted solely by its employees or agents.' " *Id*. (quoting *Monell*, 436 U.S. at 694).

"Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823–24 (1985). However, "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388 (1989).

To succeed on a failure to train or supervise claim in the Sixth Circuit, Plaintiff must prove the following:

(1) the training or supervision was inadequate for the tasks performed;
(2) the inadequacy was the result of the municipality's deliberate indifference; and
(3) the inadequacy was closely related to or actually caused the injury.

*Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

" '[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Regets v. City of Plymouth*, 568 Fed. App'x. 380, 394 (6th Cir. 2014) (quoting *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997)). There are two ways to demonstrate deliberate indifference. Plaintiff could "show prior instances of unconstitutional conduct demonstrating that the [Wayne County] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Plinton v. Cnty. of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (quoting *Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005)). In the alternative, Plaintiff could show "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation. . . ." *Id*. (quoting *Bryan Cnty.*, 520 U.S. at 409).

Wayne County has presented evidence that it has a policy in place to avoid incidents of mistaken arrest and detention. Wayne County's "Jail Operation Manual" requires that all new prisoners will not be received until they have a "proper holding document" and "LIVESCAN response." Dkt. No. 70-7, p. 2 (Pg. ID No. 397). The manual also addresses the situation where a holding document does not match a Livescan submission. *Id*. at 7. The procedure requires *immediate* action and states that "[u]nder no circumstances shall the wrong prisoner be

allowed to remain in custody without proper holding authority, for any extended period of time." *Id.* Sergeant Marks testified to the procedure that was followed when an inmate complained about mistaken identity. Dkt. No. 75-4, p. 8 (Pg. ID No. 557). In such circumstances, the individuals were re-fingerprinted for identification purposes, and immediately released upon a finding of innocence. *Id.*

Plaintiff's counsel alleged at the hearing that Wayne County's unconstitutional policy was the comparison of the Livescan with the mittimus. At the hearing, Plaintiff's counsel alleged, based on his opinion and without any supporting evidence, that errors like what happened to Plaintiff occur more than half of the time. However, Plaintiff has not provided evidence of any prior instances where Wayne County knowingly held individuals who were wrongfully arrested because of mistaken identity for extended periods of time. Plaintiff also has not provided any evidence that establishes that Wayne County's Jail Operations Manual, requiring verification of identity through the Livescan system, has been disregarded or ineffective in any instance other than the present case. Mere conjecture is insufficient at the summary judgment stage. *See Lewis v. Philip Morris Inc.*, 355 F.3d 515, 533 (6th Cir. 2004) ("In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy." (internal quotations omitted)). Similarly,

Plaintiff has not offered any evidence that Wayne County failed to train its employees to handle recurring situations presenting an obvious potential for such a violation.

The evidence showed the contrary: that County employees regularly investigate mistaken identity claims and release detainees upon verification that they are not the person named in the warrant. *See* Dkt. No. 75-4, p. 8 (Pg. ID No. 557). Plaintiff failed to controvert evidence that it was the Wayne County's practice to investigate a warrant arrestee's claim of wrongful identity. That employees apparently failed to implement a policy properly in this one instance is not sufficient for Wayne County to be held liable under § 1983. A single instance is not sufficient to show that a "practice is so widespread as to have the force of law." *Bryan Cnty.*, 520 U.S. at 404.

Consequently, the Court will grant Wayne County's motion for summary judgment on the single count against it.

## B. Plaintiff's Motion for an Adverse Inference

Federal law of spoliation governs in this case. *See Adkins v. Wolever*, 554 F.3d 650, 652 (6th Cir. 2009). A federal court has "broad discretion to craft proper sanctions for spoliated evidence." *Id*. at 651. Sanctions may include "dismissing a case, granting summary judgment, or instructing a jury that it may infer a fact based on lost or destroyed evidence." *Id*. at 653.

In the present case, the Court has determined that Plaintiff has not raised a genuine issue of material fact on his municipal liability claim against Wayne County. Accordingly, the Court must deny Plaintiff's Motion to Add an Adverse Inference Against Wayne County as moot.

## V. CONCLUSION

For the reasons stated herein, the Court will **GRANT** Wayne County's Motion for Summary Judgment [70] and **DENY** Plaintiff's Motion for an Adverse Inference as moot.

IT IS SO ORDERED.

Dated: December 7, 2016

/s/Gershwin A Drain
HON. GERSHWIN A. DRAIN
United States District Court Judge