# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | 100 EAST FIFTH STREET, ROOM 540 | |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: May 13, 2020

Ms. Stephanie Lee Arndt
Fieger, Fieger, Kenney & Harrington
19390 W. Ten Mile Road
Southfield, MI 48075

Ms. Mary Massaron
Plunkett Cooney
38505 Woodward Avenue, Suite 100
Bloomfield Hills, MI 48304

          Re: Case No. 19-1555, *Marvin Seales v. Thomas Zberkot*
               Originating Case No. : 4:12-cv-11679

Dear Counsel,

   The court today announced its decision in the above-styled case.

   Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                             Yours very truly,

                             Deborah S. Hunt, Clerk

                             Cathryn Lovely
                             Deputy Clerk

cc: Mr. David J. Weaver

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0146p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

MARVIN SEALES,

    *Plaintiff-Appellee*,

*v.*

CITY OF DETROIT, MICHIGAN, et al.,

    *Defendants*,

THOMAS ZBERKOT,

    *Defendant-Appellant*.

No. 19-1555

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 4:12-cv-11679—Gershwin A. Drain, District Judge.

Argued: May 5, 2020

Decided and Filed: May 13, 2020

Before: MERRITT, SUHRHEINRICH, and SUTTON, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Mary Massaron, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Appellant. Stephanie L. Arndt, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., Southfield, Michigan, for Appellee. **ON BRIEF:** Mary Massaron, PLUNKETT COONEY, Bloomfield Hills, Michigan, for Appellant. Stephanie L. Arndt, FIEGER, FIEGER, KENNEY & HARRINGTON, P.C., Southfield, Michigan, for Appellee.

No. 19-1555  *Seales v. City of Detroit, et al.*  Page 2

## OPINION

SUTTON, Circuit Judge. Police officers meant to arrest Roderick Siner, who goes by the alias Marvin Seals. They arrested Marvin *Seales* instead. Fifteen days later, the State realized the mistake and released Seales. Seales sued Thomas Zberkot (the police officer who arrested him), the City of Detroit (which held him for the first two days), and Wayne County (which held him in jail for about thirteen days after that). By the time of trial, only Officer Zberkot remained in the case, and the jury awarded Seales $3.5 million for wrongful detention under federal and state law. Because Officer Zberkot handled the case for fewer than three hours and because our prior decision in this case held as a matter of law that there was probable cause to arrest Seales given the similarities between him and Seals, we must reverse.

I.

Officer Zberkot worked for the Detroit Fugitive Apprehension Team, a task force made "up of federal, state, and local police departments." R. 163 at 14. As its name suggests, the unit handles fugitive arrests. Most of the time, another law enforcement agency gives the team an outstanding warrant and team members "go and seek that person." R. 161 at 16. They act more like government-employed "bounty hunter[s]" than investigators. *Id.* at 17.

In January 2012, Sergeant Steven Faith was tasked with arresting "Marvin Seales a/k/a Roderick Siner." R. 161 at 17; R.163 at 46, 48. Planning to detain him in a Detroit precinct, Sergeant Faith asked Officer Zberkot for help because only Detroit police officers (like Zberkot) can book a suspect in the city.

The officers met at the location "develop[ed]" for Seales, a food processing plant in Warren, Michigan. R. 161 at 28. A manager led them to Seales. When the officers tried to arrest him, Seales responded, "You got the wrong guy." R. 163 at 81.

Sergeant Faith handcuffed Seales and drove him to a Detroit precinct. Officer Zberkot drafted a report describing the arrest and helped Sergeant Faith and another officer prepare

Case 4:12-cv-11679-GAD-DRG ECF No. 214, PageID.3432 Filed 05/13/20 Page 4 of 15
Case: 19-1555 Document: 55-2 Filed: 05/15/2020 Page: 3 (4 of 15)

No. 19-1555         *Seales v. City of Detroit, et al.*         Page 3

Seales' "detainee input sheet." *Id.* at 57–58. Other officers handled the rest of the process. Officer Zberkot did not fingerprint Seales, search him, take his mugshot, or interrogate him. All told, Zberkot spent two hours and fifty minutes on Seales' case.

Seales told Officer Zberkot "like, 20 times" that he was innocent. *Id.* at 94. He also asked Officer Zberkot to check his wallet because it contained identification showing he was not their man. Officer Zberkot "kind of chuckled" at this idea, reviewed Seales' wallet, and said Seales' identification could be "fake or phony." *Id.* at 95.

Seales spent two nights in the precinct. The following day he went before a judge for arraignment. The judge called "People of the State of Michigan versus Roderick Siner." *Id.* at 158. Asked for his name, Seales said "Marvin Seales." *Id.* With this answer, he was sent to the "end of the line." *Id.* When he made it to the front again, Seales figured "I better say, Roderick Siner, I understand these charges" because he "wasn't going to get past that point if I didn't." *Id.*

Authorities transferred Seales to the Wayne County Jail where he stayed for almost two weeks. Seales filed a grievance with the jail insisting on his innocence. But he also signed a medical intake form "R. Siner" because "[t]hat was the name I was booked under," and he wanted to make sure he could get medical attention if needed. R. 163 at 104. No one at the jail followed up on his concerns.

On February 1, 2012, Seales' ordeal ended. At his preliminary examination, the victim of the crime told prosecutor that Seales was not the man who shot at him. The prosecutor told the judge and successfully moved to dismiss the case.

In April 2012, Seales sued Officer Zberkot under 42 U.S.C. § 1983 for unlawful arrest and unlawful detention under the Fourth and Fourteenth Amendments and for false arrest, false imprisonment, and gross negligence under Michigan law. Seales brought similar claims against Wayne County and Detroit. He did not sue any other officers, whether at the precinct or the jail.

In 2013, Detroit filed for bankruptcy protection and obtained a stay of the case. In 2015, the city emerged from bankruptcy and the case resumed. The district court granted the city summary judgment on all of Seales' claims. He did not appeal the ruling. As for Wayne

No. 19-1555                     *Seales v. City of Detroit, et al.*                     Page 4

County, which held Seales in jail for almost two weeks, the district court granted it summary judgment on one claim. Seales did not appeal that ruling and eventually voluntarily dismissed the rest of his claims against the county.

Officer Zberkot unsuccessfully raised several immunities from suit before the district court. On appeal, a panel of this court rejected Seales' Fourth Amendment unlawful arrest claim as a matter of law due to the similarities between Seales and the true suspect. *Seales v. City of Detroit*, 724 F. App'x 356, 361–62 (6th Cir. 2018). But it allowed the federal due process unlawful detention claim and related state claims to proceed to a jury. *Id.*

A jury awarded Seales $3.5 million in compensatory and punitive damages on his federal and state law claims. Officer Zberkot moved for judgment as a matter of law on all of Seales' claims. The court denied the motion.

II.

We review the district court's denial of Zberkot's Civil Rule 50(b) motion for judgment as a matter of law with fresh eyes. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010). That means we ask the same question the district court did. Viewing the evidence in the light most favorable to Seales, could reasonable minds "come to but one conclusion" in Officer Zberkot's favor? *Id.*

Start with Seales' federal claim. At the outset, we should note that he treats this as a due process claim, as did our prior panel decision in this case and as did an earlier decision of ours. *See Gray v. Cuyahoga Cty. Sheriff's Dep't*, 150 F.3d 579, 582 (6th Cir. 1998). That is not the only way to think about such claims. *See Russo v. City of Bridgeport*, 479 F.3d 196, 208 (2d Cir. 2007) (treating unlawful detention claim as a Fourth Amendment claim). But because both parties and all of the courts to look at this claim have treated it as a due process claim, we will do the same.

If the State detains a person "in the face of repeated protests of innocence," the detention may "deprive the accused of liberty . . . without due process of law" depending "on what procedures the State affords defendants following arrest and prior to [a] trial." *Baker v.*

Case 4:12-cv-11679-GAD-DRG   ECF No. 214 PageID.3434  Filed 05/13/20   Page 6 of 15
Case: 19-1555   Document: 55-2   Filed: 05/15/2020   Page: 5   (6 of 15)

No. 19-1555                     *Seales v. City of Detroit, et al.*                     Page 5

*McCollan*, 443 U.S. 137, 145 (1979).  Not all wrongful detentions violate due process, however. "The Constitution does not guarantee that only the guilty will be arrested." *Id.*  In *Baker*, a sheriff's department erroneously detained "Linnie McCollan" instead of "Leonard McCollan" for "three days over a New Year's weekend." *Id.* at 140–41, 145.  That brief period, the Court explained, "does not and could not amount to" a due process violation. *Id.* at 145.

The "reasonable division of functions between law enforcement officers, committing magistrates, and judicial officers" means that officers are not obliged to investigate each claim of innocence during the short period they detain suspects. *Id.* at 145–46.  An officer "maintaining custody of the accused" is not required "to perform an error-free investigation" of mistaken identity claims. *Id.* at 146.  "The ultimate determination of such claims of innocence is placed in the hands of the judge and the jury." *Id.*  Our decision in *Gray* explained that a plaintiff must prove that his jailers "acted with something akin to deliberate indifference in failing to ascertain" that the person in custody is not the person wanted on the warrant. *Gray*, 150 F.3d at 583.

Measured by these principles, a reasonable jury had just one option in this case: to find that Officer Zberkot did not violate Seales' right to due process.  The key problem is that our prior decision rejected the false-arrest claim against Officer Zberkot as a matter of law, meaning we must start with the assumption that probable cause existed to arrest Seales and detain him. *Seales*, 724 F. App'x at 361–62.

That assumption creates insurmountable problems for this unlawful detention claim.  One is that Officer Zberkot, as an arresting officer, had little more to do with Seales' detention.  That's when the rest of the criminal process took over.  He did not fingerprint Seales, interrogate him, or for that matter stay at the prison where he could hear complaints about his innocence.  He spent less than three hours on the case, nearly all of it involved in doing the one thing our prior panel made clear he was not liable for: initially detaining Seales through execution of the arrest warrant.  Seales offers no good explanation why Officer Zberkot bears responsibility for his detention for the next two days or for his time in the county jail for thirteen days after that.  Seales did not communicate with Officer Zberkot again, and neither did his jailers during that period.

No. 19-1555                      Seales v. City of Detroit, et al.                      Page 6

There is another problem too. Seales had the opportunity to speak with a judge within forty-eight hours of his initial arrest and decided to say that his name was "Roderick Siner." R. 163 at 157–58. He went down the same road early in the jail process by saying, again, that he was Rodrick Siner in filling out the paperwork. Whatever his explanations for offering this alias, they can't be laid at the feet of Officer Zberkot. The officer had nothing to do with the sequencing of cases in court that day, and he had nothing to do with providing medical care to detainees. None of this remotely suggests that Officer Zberkot denied Seales due process by unlawfully detaining him under the Fourteenth Amendment.

By our lights, Seales sued the wrong person. Officer Zberkot merely helped to arrest Seales and initiated the booking procedures, all legitimately under the Fourth Amendment. He wasn't Seales' jailor. Seales admits that other officers at the precinct had the responsibility to maintain custody over him. Seales offers no explanation why Zberkot, as opposed to the jailers, bears responsibility for the fifteen-day detention.

Compare Seales' case to others in this respect. In *Gray*, the plaintiff sued the deputies who oversaw his 41-day confinement. 150 F.3d at 580, 582–83. And in *Baker* the plaintiff sued the Sheriff in charge of the deputies who kept watch over McCollan for the three days he remained in jail. *See* 443 U.S. at 141, 151 (Stevens, J., dissenting); *see Russo*, 479 F.3d at 202; *Patton v. Przybylski*, 822 F.2d 697, 701 (7th Cir. 1987); *Thurmond v. County of Wayne*, 447 F. App'x 643, 650 (6th Cir. 2011). Not so for Officer Zberkot.

Nor for some of these same reasons could a reasonable juror believe that Officer Zberkot acted with deliberate indifference to Seales' plight. Officer Zberkot did not have access to the key exculpatory information. Unlike the deputies in *Gray*, he did not receive fingerprint or photographic evidence showing that Sergeant Faith's team arrested the wrong man. 150 F.3d at 582–83. Nor did he listen to protests of innocence for hours on end and fail to do anything to investigate Seales' claim. Officer Zberkot spent a total of *two hours and fifty minutes* on Seales' case, and only a portion of it on processing his arrest. That does not suffice to hold him responsible for fifteen days of unlawful detention—and not even to hold him responsible for the first three hours of Seales' detention given *Baker* and our prior decision that he had probable cause to arrest Seales.

Case 4:12-cv-11679-GAD-DRG ECF No. 214 PageID.3436 Filed 05/13/20 Page 8 of 15
Case: 19-1555 Document: 55-2 Filed: 05/15/2020 Page: 7 (8 of 15)

No. 19-1555                    *Seales v. City of Detroit, et al.*                    Page 7

Seales resists this conclusion on the ground that sufficient evidence shows that Officer Zberkot was responsible for his entire detention. What evidence? There's nothing after the first day. True, Zberkot arrested him. But a prior panel rejected Seales' false-arrest claim against Officer Zberkot as a matter of law. *Seales*, 724 F. App'x at 362. True also, Officer Zberkot filled out the arrest forms, and without them Seales would not have been detained in the first place. But these realities don't make Officer Zberkot responsible for the fifteen-day detention. At most, they tie him to the two days of detention in the precinct, a length of time that isn't enough in light of *Baker*. It's his stint in the county jail that would seem to establish a triable issue of fact. For that period of time, Seales could blame the officers who had more immediate access to exculpatory information, like the officer who fingerprinted him, or the county jailors who ignored his grievance. But he can't blame Officer Zberkot who had no responsibility for his continued detention—and certainly not after Seales' day-two admission in open court that he was "Siner" or his medical form saying he was "Siner." Seales has never explained, not in his briefs and not at oral argument, why, in the context of an unlawful-detention claim, he opted not to sue the detaining officers and jailers, and voluntarily dismissed his claims against the County.

Even if we zero in on just what Officer Zberkot did, that does not show deliberate indifference. Seales points out that the officer could have followed up on his initial protestations of innocence or checked his identification, and he shouldn't have chuckled at the idea that Seales' identification would exculpate him. In one sense, we agree. Officer Zberkot should have shown Seales more respect and not laughed off his claims of innocence as one more suspect denying responsibility for a crime. But disrespect does not equal deliberate indifference. The Constitution does not require officers "executing an arrest warrant . . . to investigate independently every claim of innocence, whether the claim is based on mistaken identity" or some other exculpatory reason. *Baker*, 443 U.S. at 145–46. And that's especially so when the permissible arrest, *Seales*, 724 F. App'x at 361–62, includes evidence that the suspect used an alias.

What about the fact, Seales protests, that Zberkot could have obtained a photograph of Siner and compared it to Seales? All Zberkot had to do, Seales says, was run a quick computer check while filling out Seales' arrest report. But the point overlooks some realities. Seales never

No. 19-1555         *Seales v. City of Detroit, et al.*         Page 8

offered or developed any evidence that Zberkot had the responsibility to take this precaution given his limited role in processing Seales. Recall that another officer took his mugshot and that other officers handled the majority of his processing. If anyone should have compared a photo of Siner against Seales, it would be these officers—individuals whom Seales opted not to sue.

Even if we assumed an officer in Zberkot's shoes—one documenting a lawful arrest—typically has an obligation to run this check, don't forget that other officers helped fill out Seales' paperwork. Who's to say that Zberkot is the officer that had the easiest access to the database? Or that the portion of the reports he completed are associated with the search Seales now demands? We have no answers to these questions because of Seales' singular focus on Officer Zberkot. Notably, Seales had the chance to ask questions along these lines of Officer Zberkot, and he never took advantage of that opportunity.

Nor do an arrestee's claims of innocence in the context of a permissible arrest create later liability for an officer who does not have responsibility to oversee the custody. Else, every suspect could transform arresting officers into his own private investigators. *See Atkins v. City of Chicago*, 631 F.3d 823, 828 (7th Cir. 2011). We have not found, and Seales has not identified, a single mistaken identity case of this sort—in which the arresting officer had probable cause to make the arrest and nonetheless was found responsible for the unlawful detention after he completed the task of booking the suspect.

Officer Zberkot's skepticism about Seales' identification, by the way, is not a first in police investigation. Sometimes that skepticism is justified. False identification often is an essential tool for fugitives. *See Baker*, 443 U.S. at 140–41; *Powe v. City of Chicago*, 664 F.2d 639, 642–43 (7th Cir. 1981). Nor did anything prevent Seales from making the same point to the officers overseeing his detention, when exculpatory evidence of this sort (photographs, fingerprints) had to be readily available. Zberkot's limited interactions with Seales, his complete lack of interaction after three hours, and Seales' two statements within 48 hours of the arrest that he was "Siner" preclude liability for unlawful detention.

Case 4:12-cv-11679-GAD-DRG ECF No. 214, PageID.3438 Filed 05/13/20 Page 10 of 15
Case: 19-1555 Document: 55-2 Filed: 05/13/2020 Page: 9 (10 of 15)

No. 19-1555           *Seales v. City of Detroit, et al.*           Page 9

III.

Even though Seales failed to establish a violation of his federal constitutional rights, he may seek relief based on state law. The upside of federalism is that it offers litigants two shots at relief. The downside is that it offers two chances to miss, particularly if a State does not offer independent grounds for relief delinked from federal constitutional law and federal qualified immunity law. *See* Aaron L. Nielson & Christopher J. Walker, *Qualified Immunity & Federalism*, 108 Geo. L. J. (forthcoming 2020). Here, Michigan law does not support the claims.

Seales' claims for false arrest and false imprisonment fail because Michigan law does not treat them differently from the counterpart federal claims. All turn on the same answer to the same question: Was there probable cause to arrest Seales? To prevail under state law, "a plaintiff must show that the arrest was not legal, *i.e.*, the arrest was not based on probable cause. If the arrest was legal, there has not been a false arrest or false imprisonment." *Peterson Novelties, Inc. v. City of Berkley*, 672 N.W.2d 351, 362 (Mich. Ct. App. 2003) (per curiam); *see Odom v. Wayne County*, 760 N.W.2d 217, 229 (Mich. 2008). "Probable cause requires a quantum of evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt." *People v. Yost*, 659 N.W.2d 604, 607 (Mich. 2003) (quotation omitted).

Officer Zberkot had probable cause to arrest Seales as a matter of law. As we recognized last time, "Seales had essentially the same name as Siner's alias, was the same sex, same race, and the same age as Siner, and was working in the same geographic location in which Siner resided. Additionally, [the task force] had previously developed the address for where the team could find Siner and Zberkot found Seales at that address." *Seales*, 724 F. App'x at 361–62.

Seales counters that our prior opinion discussed probable cause in relation to his Fourth Amendment claim, not his state law claims. That's true. It's also true that the Fourth Amendment of the U.S. Constitution and Article I, § 11 of the Michigan Constitution need not mean the same thing. It's true, too, that the Michigan Supreme Court has, "on occasion, construed the Michigan Constitution in a manner which results in greater rights than those given

Case 4:12-cv-11679-GAD-DRG ECF No. 214, PageID.3439 Filed 05/13/20 Page 11 of 15
Case: 19-1555 Document: 55-2 Filed: 05/15/2020 Page: 10 (11 of 15)

No. 19-1555                    *Seales v. City of Detroit, et al.*                    Page 10

by the federal constitution." *People v. Nash*, 341 N.W.2d 439, 446 (Mich. 1983); *compare Mich. Dep't of State Police v. Sitz*, 496 U.S. 444, 450–51 (1990), *with Sitz v. Mich. Dep't of State Police*, 506 N.W.2d 209, 210–218 (Mich. 1993). But no Michigan case to our knowledge (or to Seales' knowledge) shows that Michigan's "search and seizure" guarantee adopts a different test for "probable cause" or more precisely a test that would change the outcome on these facts. Those facts point to one conclusion under Michigan and federal law: A person of "ordinary prudence" would have "a reasonable belief" that Seales was the right man. *Yost*, 659 N.W.2d at 607.

Seales adds that we should analyze his confinement at the precinct separately from his arrest. Viewed from this perspective and viewed with an eye to other people responsible for his 15 days of confinement, a reasonable trier of fact indeed could conclude that someone falsely imprisoned Seales. But Seales offers no explanation, much less any case, to support the proposition that *this officer* became liable for false imprisonment when he failed to investigate further the identity of a suspect he had probable cause to arrest. We have found nothing that would support his conclusion either. That gap in authority becomes more yawning when one accounts for the reality that other officers, to say nothing of the county jail, had responsibility to oversee Seales' detention and they heard complaints that he was the wrong guy during the time.

What of Seales' gross negligence claim? Michigan's statutory immunity for police officers does this claim no favors. The Michigan Government Tort Liability Act protects an officer from lawsuits for his on-the-job conduct unless it rises to "gross negligence that is the proximate cause of the injury or damage." Mich. Comp. L. § 691.1407(2); *Odom v. Wayne County*, 760 N.W.2d 217, 222 (Mich. 2008). Seales did not present sufficient evidence that Officer Zberkot acted grossly negligent toward him or that his conduct proximately caused Seales' harm.

The Act defines "[g]ross negligence" as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." Mich. Comp. L. § 691.1407(8)(a). This definition sets an imposing bar. "[S]imply alleging that an actor could have done more is insufficient under Michigan law, because with the benefit of hindsight, a claim can always be

made that extra precautions could have influenced the result." *Wood v. City of Detroit*, 917 N.W.2d 709, 714 (Mich. Ct. App. 2018) (quotation omitted).

Officer Zberkot's conduct doesn't rise to this level as a matter of law. He helped to make an arrest that others had investigated. As a member of a fugitive apprehension task force, his role was to arrest suspects and get them to the precinct, not to see them through the entire booking process. Officer Zberkot could have investigated Seales' claims of innocence himself, but he trusted that there was "a process in place within [the Detroit Police Department] by which it will be determined later whether" a suspect is the person wanted on the warrant or not. R.163 at 52. At most, his decision not to follow up may have been negligent, but it didn't reflect "a singular disregard for substantial risks" that's required to establish gross negligence. *Tarlea v. Crabtree*, 687 N.W.2d 333, 339 (Mich. Ct. App. 2004).

Officer Zberkot's conduct, moreover, was not "the proximate cause" of Seales' harm within the meaning of the Act. To count as "the proximate cause," the conduct must be the "most immediate, efficient, and direct cause of the injury." *Ray v. Swager*, 903 N.W.2d 366, 369 (Mich. 2017) (quotation omitted). Officer Zberkot's failure to act doesn't qualify because there are other more immediate, efficient, and direct causes of Seales' injury. There's Sergeant Faith's failure to ensure that he targeted the right person. There's the booking officers' failure to confirm Seales was Siner during the fingerprinting and mugshot process. And there's Seales' own role in his confinement—his decision to say his name was Roderick Siner at his arraignment and his willingness to sign a form with that name in the county jail. Although the proximate cause inquiry is not about weighing "factual causes," we also don't have to decide what exactly is the proximate cause of Seales' injury to know that it was not Officer Zberkot's conduct. *Swager*, 903 N.W.2d at 372.

Seales disputes both conclusions. As for Officer Zberkot's gross negligence, he points to *Kendricks v. Rehfield*, 716 N.W.2d 623 (Mich. Ct. App. 2006), as an example of a court treating conduct similar to Officer Zberkot's as grossly negligent. But that case distinguishes itself and ultimately undermines Seales' claim. Two police officers detained the wrong man for *seven months*. *Id.* at 624. The court held that enough "indicia of gross negligence" existed in the case to create a genuine issue of material fact. *Id.* at 625. But unlike the defendants in that case,

Officer Zberkot did not have easy access to exculpatory evidence, like fingerprints, that would have proved he had the wrong man. *Id.* Nor did he oversee Seales' custody for seven months. He worked on Seales' case for two hours and fifty minutes. His conduct falls into the category of cases *Kendricks* suggested would not amount to gross negligence. "We . . . might be inclined to agree," the court acknowledged, "that a delay of a day or even several days before investigating plaintiff's claim of mistaken identity could have been reasonable." *Id.* at 682. That's Seales' case.

That our prior opinion invoked *Kendricks* in allowing Seales' claim to go to a jury does not change things. *Seales*, 724 F. App'x at 367. What matters now is the "complete trial record and not the incomplete pretrial record available at summary judgment." *K&T Enterprises, Inc. v. Zurich Ins. Co.*, 97 F.3d 171, 174 (6th Cir. 1996) (quotation omitted). And to our eyes, it appears that the trial revealed an exceptionally important fact: Officer Zberkot spent a few hours on Seales' case, not a few months. R.163 at 21. That conduct doesn't come close to the type of behavior that concerned the court in *Kendricks*.

It does not change things that Officer Zberkot acknowledged that, "when somebody says you have got the wrong person, you [as a police officer] have to do something[.]" R. 163 at 18. Everything he experienced indicated the team arrested the right person, and our court said so as a matter of law with respect to the initial arrest—and that record has not changed. And within 48 hours of the arrest, Seales said he was Siner, seemingly confirming the point.

Seales' proximate cause argument fares no better. He argues that, but for Officer Zberkot's role in processing his paperwork, he never would have been detained. No doubt. But that doesn't soften the reality that other causes better fit the definition of the "one most immediate, efficient, and direct cause" of Seales' injury. And that doesn't change the fact that Officer Zberkot could not have foreseen how every other officer and jailer would fail to discover Seales' true identity, that Seales would stop protesting his innocence, and that he would even say he was Siner in open court and on a medical form.

* * *

Case 4:12-cv-11679-GAD-DRG ECF No. 214 PageID.3442 Filed 05/13/20 Page 14 of 15
Case: 19-1555 Document: 55-2 Filed: 05/13/2020 Page: 13 (14 of 15)

No. 19-1555           *Seales v. City of Detroit, et al.*           Page 13

It's not lost on us that something has gone amiss. Take stock of Seales' plight. He was arrested and detained for fifteen days, all falsely. Why? The State had the wrong man. Soon after he sought compensation for his ordeal in *2012*, he suffered a second misfortune when one of the defendants, the City of Detroit, went bankrupt, suspending the case for several years. After that, he withstood motions for summary judgment, obtained a jury trial, and won—$3.5 million. Now we must reverse. Why? He sued the wrong man. That does not seem right—and maybe it isn't. But the key failings in this case of mistaken identities relate to the Wayne County jail and the people who detained him there. *Cf. Patton*, 822 F.2d at 701. Unless or until Seales sues the right people or the right government, there is little we can do.

We must reverse.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 19-1555

MARVIN SEALES,

    Plaintiff - Appellee,

v.

CITY OF DETROIT, MICHIGAN, et al.,

    Defendants,

THOMAS ZBERKOT,

    Defendant - Appellant.

**FILED**
May 13, 2020
DEBORAH S. HUNT, Clerk

Before: MERRITT, SUHRHEINRICH, and SUTTON, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court
for the Eastern District of Michigan at Flint.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is REVERSED.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk